**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

---

**VIVIANNE C. BAILLARGEON,**

**Plaintiff**

**-against-**

**LINCOLN EDUCATIONAL SERVICES CORPORATION; CAREER EDUCATION INSTITUTE,**

**Defendants.**

---

**C.A. No.: 06-261-T**

**DEFENDANT'S RULE 16 STATEMENT**

## I. PRELIMINARY STATEMENT.

Defendant Lincoln Educational Services ("Lincoln") is a post-secondary educational institute. Lincoln purchased Career Education Institute ("CEI") in February of 2001, acquiring the Lincoln, Rhode Island campus. After February of 2001, Lincoln operated the Institute, employing approximately fifty (50) people at the Lincoln campus.

Plaintiff, who had been the Executive Director at the Lincoln campus of CEI, was subsequently hired by Lincoln to continue in the same capacity. The Executive director works to ensure profitability without compromising educational quality or regulatory compliance.

On April 5, 2005, Plaintiff's employment with Lincoln was terminated for violations of wage and hour laws, and in particular, for her failure to report or allow the reporting

of overtime worked by non-exempt employees. At the time of her discharge, Plaintiff was approximately 51 years old. Plaintiff alleges that her discharge was the result of age and/or gender discrimination, and that she was retaliated against for reasons which have not been articulated.

## II. PLAINTIFF'S ALLEGATIONS OF AGE AND/OR GENDER DISCRIMINATION ARE MERITLESS.

Plaintiff has failed to allege any specific reasons for believing her employment was terminated because of her age or her gender. She has not alleged any conduct which would support an inference of discrimination, and the makeup of the staff who retained her when Lincoln purchased CEI and who made the decision to terminate her employment are in the same protected age class as the complainant.[1] Plaintiff was hired by Lincoln when she was approximately 46 years old. Moreover, the decision-makers for her termination were one of each gender, both of whom were in Plaintiff's protected age class.[2] More than 50% of the Executive Directors of Lincoln's CEI campuses are female and are members of the same protected age group.

Out of the seven CEI campuses purchased by Lincoln, six of the Executive Directors are in the same protected age group as Plaintiff. (List of Executive Directors with age data, is attached as Exhibit "A") Four of the seven campuses have female Executive Directors. (List of Executive Directors with gender data, is attached as Exhibit "B") The Executive Director chosen to replace Plaintiff, Dave Waldron, is a male, but at 46 years old, he is also in

---

[1] At the time of acquisition, approval for Plaintiff to retain her position as Executive Director was given by Ed Abrams, Group Vice President, age 50, Larry Brown, President and Chief Operating Officer, age 53, and Dave Carney, Chairman and Chief Executive Officer, age 60.

[2] Plaintiff's termination was approved by Shelly Williams, Human Resources Vice President, female, age 48, and Ron Beall, Group Vice President, male, age 61.

Plaintiff's protected age group. Plaintiff has made no allegation or representation, much less provided any evidence that she complained to anyone of any age or gender discrimination or harassment of any kind.

There is simply no evidence to suggest that Plaintiff's employment was terminated for any reason other than her own misconduct.

## III. PLAINTIFF'S EMPLOYMENT WITH LINCOLN WAS TERMINATED BECAUSE SHE FAILED TO COMPLY WITH STATE AND FEDERAL LAW REGARDING OVERTIME.

Federal and state law clearly requires overtime to be paid for work over 40 hours in a week. 29 U.S.C. §§ 206, 207, 213. Rhode Island General Laws § 28-12-4.1 *Overtime pay* states:

> (a) Except as otherwise provided in this chapter, no employer shall employ any employee for a workweek longer than forty (40) hours unless the employee is compensated at a rate of one and one-half (1 1/2) times the regular rate at which he or she is employed for all hours worked in excess of forty (40) hours per week.

None of the exemptions, which are listed in R.I.G.L. § 28-12-4.3, apply to Admissions Representatives who work for Lincoln.[3]

---

[3] **28-12-4.3 Exemptions.**

(a) The provisions of §§ 28-12-4.1 and 28-12-4.2 do not apply to the following employees:

(1) Any employee of a summer camp when it is open no more than six (6) months of the year.

(2) Police officers, firefighters, and rescue service personnel employed by the cities and towns.

(3) Employees of the state or political subdivision of the state who may elect through a collective bargaining agreement, memorandum of understanding, or any other agreement between the employer and representatives of the employees, or if the employees are not represented by an exclusive bargaining agent, through an agreement or understanding arrived at between the employer and the employee prior to the performance of work, to receive compensatory time off for hours worked in excess of forty (40) in a week. The compensatory hours shall at least equal one and one half (1 1/2) times the hours worked over forty (40) in a week. If compensation is paid to an employee for accrued compensatory time, the compensation shall be paid at the regular rate earned by the employee at the time of payment. At the time of termination, unused accrued compensatory time shall be paid at a rate not less than:

In April of 2005 the Vice President of Human Resources for Lincoln, Shelly Williams, investigated a complaint raised by an Admissions Representative at the Lincoln campus that Plaintiff was preventing hourly employees from receiving overtime pay. Ms. Williams discovered that original time sheets of non-exempt Admissions Representatives had been altered with white-out to remove recorded overtime. She also learned that Plaintiff had directed the Director of Admissions to alter the time sheets of Admissions Representatives to remove overtime hours worked.[4] Ms. Williams further found that Plaintiff had refused to allow the non-exempt Admissions Representatives to record their overtime hours on their time sheets.

---

(i) The average regular rate received by the employee during the last three (3) years of the employee's employment, or

(ii) The final regular rate received by the employee, whichever is higher.

(4) Any employee employed in a bona fide executive, administrative, or professional capacity, as defined by the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., compensated for services on a salary basis of not less than two hundred dollars ($200) per week.

(5) Any employee as defined in subparagraph (a)(4) of this section unless the wages of the employee, if computed on an hourly basis, would violate the applicable minimum wage law.

(6) Any salaried employee of a nonprofit national voluntary health agency who elects to receive compensatory time off for hours worked in excess of forty (40) hours per week.

(7) Any employee, including drivers, driver's helpers, mechanics, and loaders of any motor carrier, including private carriers, with respect to whom the U.S. secretary of transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of 49 U.S.C. § 3102.

(8) Any employee who is a salesperson, parts person, or mechanic primarily engaged in the sale and/or servicing of automobiles, trucks or farm implements, and is employed by a non-manufacturing employer primarily engaged in the business of selling vehicles or farm implements to ultimate purchasers, to the extent that the employers are exempt under the federal Wage-Hour and Equal Pay Act, 29 U.S.C. § 201 et seq. and 29 U.S.C. § 213(b)(10); provided, that the employee's weekly, bi-weekly, or monthly actual earnings exceed an amount equal to the employee's basic contractual hourly rate of pay times the number of hours actually worked plus the employee's basic contractual hourly rate of pay times one-half (1/2) the number of hours actually worked in excess of forty (40) hours per week.

(9) Any employee employed in agriculture; however, this exemption applies to all agricultural enterprises that produce greenhouse crops, fruit and vegetable crops, herbaceous crops, sod crops, viticulture, viniculture, floriculture, feed for livestock, forestry, dairy farming, aquaculture, the raising of livestock, furbearing animals, poultry and eggs, bees and honey, mushrooms, and nursery stock. This exemption also applies to nursery workers.

(b) Nothing in this section exempts any employee who under applicable federal law is entitled to overtime pay or benefits related to overtime pay.

[4] The Director of Admissions, Ed Pielka, age 54 was ultimately terminated for his role in altering overtime records.

During the investigation, Plaintiff confirmed she had knowledge of the alterations to the time sheets, and had directed the alteration of the time sheets, but asserted she was unaware these actions violated any laws. This assertion is untenable since Plaintiff had received training on federal and state wage and hour laws on at least four occasions during 2004 and early 2005. In addition, Lincoln's Human Resources Policy Personnel Manual contains a *"Wage and Salary"* section which establishes a process for reporting actual hours worked for all Inside Admissions Representatives. Moreover, since Plaintiff had been an administrator with Lincoln and its predecessors for twelve years, any plea of ignorance about how to administer overtime would, at the very least, be an admission of incompetence, which would itself be grounds for termination. Most persuasive, however, is an e-mail sent by Plaintiff on April 4, 2005, the date of the initial investigation, to the Director of Admissions, Ed Pielka, directing him to add the overtime hours to that week's timesheets. (Plaintiff's e-mail is attached as Exhibit "C") The hours she directed to be recorded that week are the same hours which were regularly altered and removed from timesheets over the past several months.

## IV. PLAINTIFF BENEFITTED FROM HER FAILURE TO REPORT OVERTIME.

The bonus structure at Lincoln is based, in part, on the school's profitability. By choosing not to pay overtime wages, Plaintiff and Mr. Pielka skewed the profitability numbers for the Lincoln campus in their favor. Not only did this increase their bonus eligibility, but it made the Lincoln campus – and its Executive Director look like stars within the company until the misconduct was discovered. Plaintiff's failure to properly follow the federal and state wage and hour laws thus ultimately caused dissention and loss of morale for the entire company.

## V. CONCLUSION.

Plaintiff has not even submitted sufficient allegations on the face of her Complaint to support a *prima facie* case of age or gender discrimination. Even if she is able to provide sufficient evidence to meet the minimal burden of proof for her *prima facie* case, she cannot prove her termination was for reasons other than a legitimate and appropriate business purpose.

Dated: January 12, 2007
Providence, Rhode Island

JACKSON LEWIS LLP
127 Dorrance Street
Providence, Rhode Island 02903
Telephone: 401-490-3444

By: /s/ Rebecca McSweeney (#4020)
Rebecca McSweeney
Attorneys for Defendant