**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**VIVIANNE C. BAILLARGEON,**
Plaintiff

C.A. No. 06-261 T

v.

**LINCOLN EDUCATIONAL SERVICES CORPORATION; CAREER EDUCATION INSTITUTE**
Defendants

# PLAINTIFF'S STATEMENT FOR RULE 16 CONFERENCE

## I. INTRODUCTION

This action was commenced by **Vivianne C. Baillargeon** (hereafter "Baillargeon" or "Plaintiff") against **Lincoln Educational Services Corporation and Career Education Institute** (hereafter "Lincoln" or "Employers" or "Defendants"), in order to remedy and seek relief for the Defendants' alleged unlawful and discriminatory employment practices, in order to remedy or seek relief for the Defendants' alleged unlawful and discriminatory employment practices based on the Plaintiff's age and gender, in violation of Title VII of the Civil Rights Act of 1964, The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and the Rhode Island Fair Employment Practices Act .

## II. FACTUAL ALLEGATIONS

Plaintiff is a female. At the time of the events cited in this Complaint, Plaintiff was 51 years of age (DOB 8/16/53). Plaintiff had been employed by the Defendants, and its predecessor, consecutively, and on a full-time basis, for approximately 12 years until

she was terminated, on or about April 5, 2005. The Defendants provide career preparation training and education programs. At the time of her termination, Plaintiff held the position of Executive Director, and at all times performed her duties in a satisfactory manner, meeting the Defendants' legitimate expectations in all respects. During the course of Plaintiff's employment, procedures and policies relative to performance standards were applied to her by the Defendants in a disparate and hostile manner based on her age and gender.

Plaintiff was alleged by the Defendants to have violated state and federal law regarding overtime. In particular, she was alleged to have required admissions representatives appear or work at employer sponsored functions, specifically so-called "open houses" for prospective students, without being paid overtime. The evidence presented during the course of an extensive hearing before the Rhode Island Department of Labor and Training, which ruled that the Plaintiff had not engaged in misconduct, indicated that no inappropriate conduct was engaged in by the Plaintiff. In fact, at the time in question, Plaintiff had been instructed by the employer to use a system predicated on compensatory time in exchange for overtime. At no time did the Plaintiff ever take any steps to circumvent state and federal overtime laws.

Nevertheless, the Plaintiff was terminated, without benefit of a fair and thorough investigation. Evidence indicates that she performed her duties in a fair and lawful manner, consistent in every respect with the requirements and expectations placed upon her by the employer. Evidence further indicates that she had no direct responsibility for administering pay or benefit policies, including overtime policies, and that she had never taken steps to discourage or block admissions representatives from seeking or receiving

overtime pay for duties meriting such compensation. In fact, it is undisputed that admissions representatives filled out time sheets, and that the pay of such employees was then determined and approved by other management personnel, including the employer's business office, and not by the Plaintiff. Plaintiff has testified, in her DLT hearing, that she has never had any basis to believe that employees in her school had not been properly paid, consistent with applicable law.

As of April 5, 2005, when Plaintiff was terminated for the false and pretextual reasons described above, she had never previously been disciplined or counseled for alleged misconduct. Moreover, she had never been informed that she was perceived as not administering pay or overtime policies, consistent with the law and the employer's requirements. As noted above, the Rhode Island Department of Labor and Training, following a full evidentiary hearing, concluded that Plaintiff did not engage in any misconduct warranting a denial of unemployment benefits, and determined that she was entitled to full benefits.

To her immediate knowledge, male individuals who were more directly involved in administering the employer's pay policies were not terminated, or were disciplined only after the Plaintiff took issue with her termination. Notably, Plaintiff was terminated shortly before substantial and valuable stock options were scheduled to increase substantially in value, as a result of the company going "public". Plaintiff, unlike male management personnel who were terminated from the company, was denied these stock options, and was denied other benefits routinely accorded male employees. Although she consistently met her performance goals, in a manner that exceeded the performance of similarly situated make employees, she was denied the same employment benefits and

incentives upon her termination. While the Defendants contend that the employer's directors are predominantly in the protected age-category, Plaintiff is believed to be one of the few female directors.

Moreover, roughly two weeks prior to her termination, one of the male Vice Presidents of the company, who was Plaintiff's direct supervisor, made disparaging comments about female employees. For example, at approximately the same time, this manager stated that a certain female employee was not performing in an appropriate manner because "it must be her time of the month." Other comments regarding "menopause" in relation to Plaintiff implicated an age and gender based bias on behalf of her supervisor. Plaintiff's previous male supervisor, also a Vice President in the company, stated among other comments demeaning to women that Plaintiff should take a male admissions representative (her husband) "into the back room" in order to "get more admissions out of him."

Plaintiff further avers that conduct engaged in by Defendants was predicated on her age and gender, resulting in her termination, and that the Defendants' conduct reflects, in both purpose and effect, a blatant, willful, and/or malicious pattern of discrimination and unlawful treatment against the Plaintiff. Plaintiff alleges that said conduct has involved an intentional, reckless, and/or callous indifference to the statutorily protected rights of the Plaintiff and that Defendants knowingly and purposefully subjected the Plaintiff to humiliating, discriminatory, and retaliatory treatment, and terminated him, as a result of her age and gender. The wrongful actions by Defendants and its agents complained of herein were taken without justification, excuse, or defense, but rather were taken in a purposefully discriminatory and unlawful manner, and have

caused the Plaintiff lost employment, lost wages, lost benefits, humiliation, embarrassment, emotional and physical harm, and other damages.

## III. TRIAL ISSUES

No unusual trial issues are anticipated. Plaintiff's case will be presented consistent with the evidentiary paradigm articulated in **McDonnell Douglas Corp. v. Green**, 411 US 792 (1973).

## IV. DISCOVERY AND SETTLEMENT DISCUSSIONS

Discovery remains outstanding. No significant settlement discussions have taken place. Plaintiff is open to any form of alternative dispute resolution.

Respectfully Submitted,
Vivianne C. Baillargeon,
By Her Attorney,

/s/ Stephen T. Fanning
Stephen T. Fanning #3900
305 South Main Street
Providence, RI 02903
401-272-8250
401-272-4520 (FAX)

Certification

I hereby certify that a true and correct copy was delivered by hand and electronic mail to Jackson Lewis LLP, counsel for the Defendants on this 16th day of January 2007.

/s/ Stephen T. Fanning